607 So.2d 841 (1992)
Kerry COPSEY
v.
JOINT LEGISLATIVE BUDGET CONTROL COUNCIL, et al.
No. CA 92 0387.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
Theodor A. Schirmer, Baton Rouge, for plaintiff-appellee Kerry Copsey.
Houston C. Gascon, III, Andre C. Castaing, Baton Rouge, for defendants-appellants Joint Legislative Budget Control Council, Senator Samuel B. Nunez, Jr. and Representative Jimmy Dimos.
Before LOTTINGER, C.J., FOIL, J., and COVINGTON[1], J. Pro Tem.
GROVER L. COVINGTON, Judge Pro Tem.
Kerry Copsey sued for a writ of mandamus, for injunctive relief, and for a declaratory judgment against defendants, Joint Legislative Budget Control Council (actually Legislative Budgetary Control Council, hereafter referred to as Council), Senator Samuel B. Nunez, Jr., Representative Jimmy Dimos, The Louisiana Randolph-Sheppard Program, The Department of Social Services, Division of Rehabilitation Services (DSS), Alton Toms, its director, Philip Reichert, its administrator, and Foundation for Historical Louisiana. The trial court granted plaintiff's motion to sever trial of the ordinary and summary proceedings, and trial was had on the writ of mandamus alone. The trial court granted the writ of mandamus, and defendants, the Council, Senator Nunez and Representative Dimos, appeal.[2] We reverse, and remand to the trial court for an expeditious trial of the *842 injunctive and declaratory judgment actions.[3]
Copsey is a blind vendor who, through the Division of Blind Services (the predecessor to DSS), participated in a program through which blind vendors are permitted to operate concessions in public buildings in Louisiana, pursuant to LSA R.S. 46:333. The Division of Blind Services and the Division of Administration signed an agreement in 1982 whereby a vending facility food service in the State Capitol, to be operated by a blind person, was made available to the Division of Blind Services. In 1985, a similar agreement was signed between the Council and DSS for a "concession area" in the State Capitol, in the breezeway at basement level. A list of items to be sold, including souvenir items as well as food and beverages, was included in the agreement.
Prior to 1985, a vending facility run by a blind person was operated in the observation tower of the State Capitol. Renovations began on the Capitol, and the observation tower was closed. In May of 1986, the Council signed a lease with the Foundation for Historical Louisiana, Inc., for it to operate a visitor center in the Pentagon barracks, and to operate a gift shop on the observation tower of the State Capitol. In February of 1987, Kerry Copsey began operating a concession stand pursuant to the 1985 agreement between DSS and the Council. That stand was located in the basement of the State Capitol.
Copsey's petition alleges that the lease between the Council and the Foundation for Historical Louisiana, Inc., violates the provisions of LSA R.S. 46:333, which states, in pertinent part:
A. State agencies, boards, commissions, and institutions owning, maintaining, or controlling state property shall in all cases give preference to blind persons... in the operation of vending stands, vending machines, and other small business concessions to be operated on the premises. No other vending stands, vending machines, or small business concessions shall be operated on the same premises with vending stands, vending machines, or other small business concessions operated, or contemplated, under the provisions of this Section.
Copsey argues that items sold by the Foundation gift shop in the observation tower duplicate items sold by him and that therefore unfair competition exists by virtue of the Council's act in leasing the observation tower to the Foundation. He further alleges that his income derived from his vending stand in the basement of the Capitol is extremely low, as compared to that enjoyed by the Foundation's shop.
The Council relies on LSA R.S. 49:150.1, which states in pertinent part:
A. Notwithstanding any other provision of law to the contrary, and particularly any provision of R.S. 49:146, the allocation and use of space within the state capitol ... shall be as provided in this Subpart....
E. (1) All areas of the state capitol, pentagon courts buildings, and Old Arsenal Museum not allocated under the provisions of Subsections B and C herein shall be for the sole use of the legislature, its agencies and officers, and the employees of the legislature and its agencies....
The Council argues that the above quoted statute takes precedence over LSA R.S. 46:333, which cannot apply to the state capitol because the allocation and use of space within the capitol is expressly reserved to the Legislature under LSA R.S. 49:150.1.
The trial court, ruling only on the writ of mandamus, determined after a hearing of the matter that the two statutes could be read together; that the Council, by its action in entering into a lease with the Foundation, had exempted itself from the provisions of LSA R.S. 49:150.1, and that therefore LSA R.S. 46:333 applied. It then granted plaintiff's writ of mandamus, but *843 did not invalidate the lease between the Foundation and the Council.
Defendants assign six specifications of error: that the lower court erred in determining that LSA R.S. 46:333 applied to the State Capitol; that it erred in failing to apply LSA R.S. 49:150.1; that it erred in finding that LSA R.S. 46:333 created a ministerial duty; that it erred in finding that LSA R.S. 46:333 created a preference in the location of a blind vending facility; that it erred in granting the writ of mandamus without finding either that relief was not available through ordinary process, or that the delays involved would cause injustice, and that the writ must be reversed as to the original defendant, Representative Dimos. Because we agree with the defendants that the writ of mandamus should not have been granted without a finding that relief was not available through ordinary process, or that the delays involved would cause injustice, we do not reach the merits of the case.
La.C.C.P. art. 3862 states, "A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice." In the present case, suit was filed in 1991; the lease between the Foundation and the Council, of which plaintiff complains, was entered into in 1986, and plaintiff testified that he talked to the predecessor blind vendor and was aware that he was unhappy with his basement vending facility before he even established his own concession in the breezeway in 1987. It is reasonable to believe that no injustice could be caused by a delay necessitated by proceeding under ordinary process rather than by summary, when plaintiff waited almost five years to bring suit.
Further, he also sued under ordinary process, asking for injunctive relief as well as a declaratory judgment. Therefore, other remedies would appear to be available at law to the plaintiff. A declaratory judgment would resolve the issue of whether the Council is authorized to enter into a lease with the Foundation, and whether that lease is valid; a writ of mandamus cannot solve that problem. An injunction could be issued which would enjoin the Foundation from operating its concession stand in competition with plaintiff. A writ of mandamus may only issue to compel the performance of a ministerial duty required by law. In this case, defendants could be ordered to "give preference to blind persons," under the terms of LSA R.S. 46:333, if in fact it is true that defendants are mandated as part of their ministerial duties to "give preference." Louisiana Department of the Treasury, Board of Trustees of the State Employees Group Benefits Program v. Williams, 451 So.2d 1308 (La. App. 1st Cir.1984).
The trial court made no ruling as to the appropriateness of a writ of mandamus under these circumstances, and we do not find that plaintiff has proved his entitlement to this extraordinary remedy. The only allegation as to possible prejudice resulting from the delay inherent in ordinary proceedings is that plaintiff is very ill. However, plaintiff's five-year delay in filing suit would seem to negate the implication that any compelling medical reason exists for granting a writ of mandamus rather than requiring plaintiff to proceed under ordinary process.
The judgment of the trial court is reversed. The case is remanded to the trial court for trial on the declaratory judgment and injunction actions. Costs are assessed to plaintiff.
REVERSED AND REMANDED.
COVINGTON, J. Pro Tem., specially concurs.
GROVER L. COVINGTON, Judge Pro Tem., specially concurring:
It has been written: the opinions of the court are not necessarily reflective of the personal philosophies of the judgesrather, they are based upon a most serious consideration and interpretation of the existing Constitution and statutes of the State of Louisiana. We are not a legislative *844 body; neither can we amend the written law by judicial fiat.
NOTES
[1] Judge Grover L. Covington, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The current Speaker of the House of Representatives is Representative John Alario. Representative Alario, by order of this court, has been substituted as a party defendant.
[3] Defendants allege that service of the ordinary proceeding was never made upon them; they were served with a rule to show cause only. Obviously, in order for the case to be tried on the merits of the declaratory judgment and injunctive relief actions, service must be made.