IgFOGG, Judge.
In this workers’ compensation action, the employer appeals a judgment finding claimant permanently totally disabled under the odd lot doctrine and ordering it to pay certain penalties, attorney’s fees, and costs. For the following reasons, we affirm in part, vacate in part, and render.
*237 On May 4, 1982, Perry Taylor, an employee of BASF Wyandotte, was injured while in the course and scope of his employment. He returned to work, but was involved in a second accident on March 23, 1984. Unable to return to work after the second accident, Taylor began receiving temporary total disability benefits (TTDs). He continued receiving TTDs until the Office of Workers’ Compensation (OWC), applying LSA-R.S. 23:1221 and 1223, reclassified his benefits as supplemental earning benefits (SEBs), applied retroactive credit for Taylor’s TTDs received since 1990, and terminated his SEBs on January 1, 2000.
Taylor filed a disputed claim form, seeking continuation of his TTDs. After a hearing, the workers’ compensation judge found Taylor was permanently totally disabled under the odd lot doctrine due to injuries he suffered on May 4, 1982. BASF appealed.
As a general rule, the Louisiana Workers’ Compensation Act in effect on the date of the claimant’s injury is controlling. Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992). Before 1983, jurisdiction over workers’ compensation claims was vested in the civil district courts. See LSA-Const. art. VII, § 35 (1921) and LSA-Const. art. V, § 16(A) (1974). Effective July 1, 1983, legislation created the OWC to administer disputed claims for workers’ compensation benefits. See 1983 La. Ex.Sess. Acts No. 1. Subsequent amendments and a successful eonstitutional 13attack of the OWC system resulted in the enactment of 1989 La. Acts No. 260, which provides, in pertinent part:
(A) A claim arising from an injury which occurred prior to July 1, 1983, shall be resolved in the same manner as other civil matters.
(B) A claim arising from an injury which occurred on or after July 1, 1983, shall be heard and resolved according to the procedures provided for in this Act.
Therefore, critical to the disposition of this matter is a determination of whether Taylor’s injury occurred before or after July 1, 1983. At trial, Taylor testified he was on the job on May 4, 1982, when he fell down a spiral staircase adjacent to a storage tank, injuring his back. Taylor was transported by ambulance to a local hospital and eventually received traction therapy, as prescribed by his treating physician, Dr. John F. Loupe. Taylor did not return to work for approximately six months. Taylor testified that when he returned to work, he was placed on light duty and was assisted for some time by a relief operator assigned to perform physical tasks too strenuous for Taylor. Taylor stated he had problems with his back after he returned to work, but he was able to perform heavy-duty tasks.
On March 23, 1984, after previously moving fresh air tanks, Taylor was assigned to perform landscaping duties. While shoveling gravel, Taylor’s back “locked,” and he could not stand upright. He again sought medical treatment from Dr. John Loupe. Dr. John Loupe eventually performed back surgery, and Taylor has not returned to work.
Dr. John Loupe’s deposition, taken in 1984, established he first treated Taylor on May 14, 1982. Taylor’s chief complaint was severe low back pain. Dr. John Loupe’s diagnosis at-that time was acute lumbosacral sprain. When Taylor’s condition did not improve, Dr. John Loupe admitted him to the hospital for inpatient traction and physical therapy. After hospitalization,J^aylor was fitted with a TENS unit. Dr. John Loupe continued treatment until he released Taylor to return to full-duty work on September 20, 1982.
*238 Dr. John Loupe next treated Taylor for back problems on April 2, 1984. Dr. John Loupe found this to be a “recurrence of [Taylor’s] back pain.” Sometime after Taylor’s June 25, 1985 laminectomy and fusion at L4-5, Dr. John Loupe referred Taylor to Dr. Jack F. Loupe. Dr. Jack Loupe’s diagnosis was “chronic lower back pain said to be of a disabling degree since March 23,1984.”
Considering the totality of the evidence, we find the workers’ compensation judge erred in concluding Taylor’s injury occurred on May 4, 1982. Following the 1982 accident, Taylor’s physician gave him a full release. He was able to return to work and continued in his employment, performing heavy-duty tasks, until the date of the second accident. Moreover, Taylor did not seek treatment from his physician for his back following his return to work until after the second accident. The record indicates Taylor’s back problems from the 1982 accident fully resolved, and the March 23, 1984 accident caused his current condition for which he is seeking disability compensation. Because Taylor’s injury occurred after July 1, 1983, he properly filed his claim with the OWC.
The workers’ compensation judge, applying 1982 law, determined that Taylor “proved by a preponderance of the evidence that he was permanently totally disabled under the Odd Lot doctrine.” However, at the time of Taylor’s injury, LSA-R.S. 23:1221(2) required clear and convincing evidence of permanent total disability. Also, the odd lot doctrine, as it pertained to permanent total disability, had been abrogated. See 1983 La. Acts No. 1, effective July 1, 1983. Thus, the workers’ compensation judge committed legal error by applying an | ¡Jncorrect legal standard, and our review will be de novo. See Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742.
Dr. Randall Lea, an orthopedist and Taylor’s current treating physician, initially stated Taylor could work only at a sedentary level and only on a part-time basis. Based on Taylor’s increased pain associated with job-hunting, Dr. Lea later revised his restrictions to allow Taylor to work no more than four hours per day. Finally, Dr. Lea expressed growing concern over Taylor’s employment potential and questioned whether Taylor could even attempt part-time sedentary work. Dr. Lea assigned Taylor “one of the lowest ... functional levels” and opined that Taylor could only attempt “the most sedentary of work” on a part-time, trial basis. Dr. Lea’s overall impression was one of little hope for Taylor’s employment prospects, categorizing Taylor as “one thread between being completely and totally disabled from doing any kind of work.”
Upon referral by Dr. Lea, Dr. Jeffrey Filiberto, a specialist in physical medicine and rehabilitation, treated Taylor for chronic back pain. Dr. Filiberto found Taylor to be at maximum medical improvement and stated Taylor was “disabled from returning to the workplace.”
The medical evidence and deposition testimonies of the doctors who treated Taylor reflect that he is not capable of returning to work, regardless of retraining or job placement. See LSA-R.S. 23:1226(D). Therefore, after a de novo review of the record, we find that there is clear and convincing evidence that Taylor is permanently totally disabled.
BASF asserts the workers’ compensation judge erred in awarding claimant a $2,000 penalty and $3,000 in attorney’s Lfees. For failure to pay benefits *239 timely, LSA-R.S. 23:1201(F)[2] provides for reasonable attorney’s fees and a penalty of 12% of any unpaid compensation or $50 per calendar day, whichever is greater, for each day benefits remain unpaid, not to exceed $2,000. The record reflects the wrongful reclassification and termination of Taylor’s benefits in 1999 necessitated extensive litigation. Moreover, after years of routine deliveries, BASF delivered Taylor’s weekly benefit check to an incorrect address in December of 1999, resulting in a lengthy delay in its receipt. Considering these events, we find no error in the awards of penalties and attorney’s. fees. See Bergeron v. Watkins, 98-0717 (La.App. 1 Cir. 3/2/99), 731 So.2d 399.
Lastly, BASF asserts the workers’ compensation judge erred in assessing costs against BASF, as it was reasonable to terminate Taylor’s benefits. Under LSA-R.S. 23:1317(B), “Costs may be awarded by the workers’ compensation judge, in his discretion.” Having found Taylor’s benefits wrongfully reclassified and terminated, we find no error in the workers’ compensation judge’s assessment of costs.[3]
Having found the date of Perry Taylor’s injury to be March 23, 1984, we vacate that portion of the judgment of the Office of Workers’ Compensation classifying Perry Taylor permanently totally disabled under the odd lot doctrine. Judgment is hereby rendered finding Perry Taylor permanently totally disabled. In 17all other respects, the judgment is affirmed. Costs are assessed against BASF.
JUDGMENT AFFIRMED IN PART; VACATED IN PART; AND RENDERED.

. When applying a workers' compensation penalty or attorney's fees provision, it is the law in effect at the time of the culpable conduct, not the date of claimant's injury, that controls. McCoy v. KMB Transport, Inc., 98-1018 (La.App. 1 Cir. 5/14/99), 734 So.2d 886, writ denied, 99-2295 (La. 11/24/99), 750 So.2d 986.

. In brief, Taylor requests additional attorney's fees for the defense of this appeal. An appellee who does not appeal or answer an appeal is not entitled to additional attorney’s fees for legal services rendered on appeal. LSA-C.C.P. art. 2133; Parfait v. Gulf Island Fabrication, Inc., 97-2104 (La.App. 1 Cir. 1/6/99), 733 So.2d 11.